26 C.C.P.A.(Patents)

In re SAUVAGEOT.

Patent Appeal No. 4027.

Court of Customs and Patent Appeals.

Dec. 5, 1938.

Arthur Wright, of New York City, for appellant.

R. F. Whitehead, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

JACKSON, Associate Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office, affirming a decision of the examiner which rejected claims 13, 14 and 15 of appellant's application for a patent on an alleged improvement in the locking of bolt nuts. No claims were allowed.

Claim 13 illustrates and is representative of the subject matter involved: "13. A nut and bolt assembly comprising a bolt having threads of normal pitch, a nut having threads of corresponding pitch, two discontinuous threads of rapid pitch on said bolt disposed in the same direction as the normal threads, and a locking nut engaging said threads of rapid pitch and threaded on the bolt in advance of the first-mentioned nut, the contiguous surfaces of said two nuts being milled and the pitch of said discontinuous threads being such as to exert a comparatively high binding pressure of the locking nut on the first-mentioned nut to prevent retrograde movement of the latter without liability of distorting said normal threads."

The rejection by both tribunals below was based on want of invention over the prior art for all of the claims and also on the ground that claims 14 and 15 are misdescriptive.

The references relied upon are: Dakin, 1,007,925, November 7, 1911; Nettlefold (British), 4893, February 26, 1913.

The British patent discloses a screw threaded bolt which carries a thread of normal pitch and a thread of "finer" pitch. While the threads are shown running in opposite directions the specification clearly describes a form in which both threads run in the same direction. Upon the thread of rapid pitch runs the nut which fastens the bolt to the object and a superimposed nut runs down to the fastening nut on the finer thread and is said to perform the function of a locknut.

It is stated in the British patent that: "In such a construction the outer nut, formed with a relatively fine thread, performs the function of the lock-nut in such a manner that, when under severe stress, whilst rotating through an equal angle with the principal nut by reason of the friction between the mutually contacting surfaces of the nuts, the mutual pressure of one nut on the other is augmented even when both screw-threads are right-handed and even more so when the fine thread of the locknut is of left-handed pitch the main-thread being right-handed."

The rapid pitch thread of the device in the application is more abrupt than that shown in the British patent. The examiner held that this difference is a matter of degree only and we are in accord with the holding.

It is true that the nuts in the application show radial, interlocking corrugations, which construction does not appear in the British patent.

The Dakin reference relates to a nutlock wherein one nut is screwed down upon another. One nut runs on a right-handed thread and the other on a left-handed thread. Each nut shows radially disposed teeth on its contacting surface, and when the top nut is screwed down upon the bottom nut, the teeth of both engage and become locked. We can see no material difference between the radial corrugations on the nuts of the application and those of the Dakin patent.

In the British patent, while the locking of the nuts is not completed by engaging

964

corrugations or teeth, nevertheless, the patent states that the locking action occurs "by reason of the friction between the mutually contacting surfaces of the nuts, * * *."

It is the examiner's view that the disclosure in the Dakin patent would· suggest corrugating the contacting faces of the nuts shown in the British patent.

The board stated that: "In both cases the nuts are designed for interengagement with each other in such a manner as to more firmly clamp them together on slight movement and thus prevent further rotation. We believe that, if it were found that the relatively smooth nut surfaces of Nettlefold did not create sufficient friction so that this clamping would occur, it would be obvious to add the corrugations of Dakin to the Nettlefold nuts in order to provide the necessary engagement between the nuts."

We agree with the reasoning of the examiner and of the board and find no error in their holdings.

In view of our decision that none of the claims on appeal present invention over the Nettlefold (British) patent, because it appears obvious to provide milled or corrugated contacting surfaces to the nuts thereof, as shown in the Dakin patent, it is not necessary to consider the further ground of rejection as to claims 14 and 15.

The decision of the Board of Appeals is affirmed.

Affirmed.